MERCHANTS' STATE BANK OF VELVA, NORTH DAKOTA, a corporation, Respondent, v. S. S. STREEPER, Appellant:

(186 N. W. 98.)

**Bills and notes — judgment — verdict for defendant held not supported by evidence; judgment notwithstanding verdict held proper, although no motion for directed verdict previously made.**

This is an action on a promissory note. The defense was want of consideration. The case was tried to a jury. No motion for a directed verdict was made. by either party. The jury returned a verdict in favor of the defendant. Thereafter the. plaintiff moved in. the alternative for judgment notwithstanding the verdict or for a new trial. The trial court ordered judgment notwithstanding the verdict in plaintiff's favor. The evidence is examined and it is *held* that the verdict in favor of the defendant was not supported by the evidence and that the trial court was correct in setting the verdict aside and in ordering judgment notwithstanding the verdict.

Opinion filed Dec. 15, 1921.

From a judgment of the district court of Ward County entered pursuant to an order for judgment notwithstanding the verdict, defendant appeals.

Affirmed.

*Nestos & Herrigstad,* for appellant.

The court erred in ordering that judgment in favor of the defendant be vacated and set aside and that the plaintiff have judgment notwithstanding the verdict since no moton for a directed verdict was made at any time during the trial of the action. 12 N. D. 74; 17 N. D. 310.

The court also erred in holding, as the court must have done, that there was not sufficient evidence to sustain the verdict rendered by the jury. Marquardt v. Huebner, 80 N. W. 616; Bragg v. Railway Co. 83 N. W. 511; Merritt v. Railway Co. 84 N. W. 321; 11 N. D. 456; Nelson v. Grundahl 12 N. D. 130; Richmore v. Andrews & Gage Elev. Co. 11 N. D. 453.

The court erred in failing to deny plaintiff's motion for a new trial and for judgment notwithstanding the verdict. Jones v. Ruff, 12 N. D.

74; Landis Mach. Co. (a corp.) v. Konantz Saddlery Co. 17 N. D. 310; Hurt v. Ford, 41 L. R. A. 823.

"A motion for judgment notwithstanding the verdict must be made before judgment for the other party, and the granting of such motion is without right and will leave the first judgment unimpaired even though it is coupled with a motion to vacate the first judgment. Ex Parte Dean Jones, 154 Ala. 265; 45 So. 152; (See 4 L. R. A. N. S., 348).

*Fisk, Murphy & Nash,* for respondent.

CHRISTIANSON, J. This is an action on a promissory note in the sum of $500, dated October 25, 1916, payable January 1, 1918. The defense is that there was no consideration for the note. There was no motion for a directed verdict. The jury returned a verdict in favor of the defendant. Plaintiff thereafter moved in the alternative for a judgment notwithstanding the verdict or for a new trial. The trial court gave judgment notwithstanding the verdict. Judgment was entered accordingly, and the defendant has appealed from such judgment.

It appears from the evidence that the defendant was instrumental in procuring a purchaser for a tract of land belonging to the plaintiff bank. During the negotiations another tract was substituted, and it was definitely agreed that the commission to be paid to the defendant for obtaining such purchaser should be $500 and no more. In evidence of such agreement the bank executed and delivered to the defendant the following written instrument:

Velva, North Dakota, October 25, 1916.

"This certifies that Mr. S. S. Streeper of Sawyer, North Dakota, holds an equity in that certain contract for a deed between the Merchants' State Bank of Velva, North Dakota, and Mr. Frank S. Dom and his wife covering the west half (W. ½) of section eight (8) township one hundred fifty-two (152) range eighty (80), said equity being in the sum of five hundred ($500.00) dollars to be paid out of the crops to be raised the fall of 1917 on said land, providing said crops are sufficient, above interest due on the contract and taxes. If such crops are not sufficient then this equity shall be paid out of subsequent crops.

"And the Merchants' State Bank is this day accepting a note from

Mr. S. S. Streeper in the sum of five hundred ($500.00) dollars to be secured by his equity in the above-mentioned contract for a deed, to be paid when this equity in the contract is paid."

"Merchants' State Bank,
"By A. E. Sevaried, Cashier."

At the same time this instrument was delivered the defendant executed and delivered to the plaintiff the note in suit; and the cashier of the plaintiff bank delivered to the defendant a note, which he owed to the bank, in the sum of $100, and a cashier's check for $400, which the defendant subsequently cashed. So far as there is any dispute as to the facts, it relates to what was said and done at the time these instruments were executed and delivered. With respect to this, Mr. Sevaried, the cashier of the defendant bank, testified:

"After we had made up this contract Mr. Dom made a settlement, as I remember it. It was getting toward evening. One of them suggested they better go, because it was getting late. They were going out to some supper that evening. They went out of the bank, and Mr. Streeper made some pretense to Mr. Dom that he had to see me about something else, and he came in and said, 'How are going to fix up for my commission?' I said, 'Mr. Streeper, of course, you realize all the time that your proposition was this amount to be $500 to pay on the contract,' and that was considered a small amount on a contract of $12,000, and I said, 'You realize further that I can't pay you in cash on your proposition, because it is only $500 that is paid in.' 'Well,' he says, 'I am badly in need of money, and I ought to have this money to use,' and I thought around awhile. I have always had very agreeable terms with Mr. Streeper before in our business transactions, and I said to Mr. Streeper: 'Well, we can fix it this way: I will let you have this money, and you give me your note, and this contract will stand as security to your note, and I will furthermore make that note draw the same rate of interest as your contract is drawing, so that you will be out nothing, not even the interest, when Mr. Dom pays on the contract.'

"Q. In other words, you loaned him the $500? A. Yes, sir.

"Q. And at that time he gave you the note Exhibit 1? A. Yes, sir.

"* * * A. Yes, sir.

"Q. I will show you Exhibit A, and ask you if you drew that

agreement and turned it over to Mr. Streeper? A. Yes, sir; I did.

"Q. How did you come to do that? A. It came about this way: When I said to him, 'I will loan you $500, and you give me your note,' I said, 'I will give you a specific receipt that will show that you have an equity in this contract so that when Mr. Dom pays $500 on his contract, we will not retain the $500.'

"Q. That is the way you would protect Mr. Streeper? A. Yes, sir."

The defendant on his direct examination testfied as follows:

"Q. Now, isn't it a fact that you and Mr. Sevaried had that express understanding that he was selling that land with only $500 paid down? He told you expressly that in view of the fact that there was only $500 paid, that you would have to take your commission out of the contract as it was paid in money; didn't he tell you that in substance, and didn't you agree to it in substance? A. I signed that article.

"Q. You signed that order? A. What order?

"Q. Signed this note. A. What note?

"Q. I asked you this, is it not a fact that Mr. Sevaried said to you in substance this, that, 'Your man will only pay a small amount in cash; a great bulk of the price has got to be taken out in crop contract, and you must take your chance on commission, the same as we are taking chances on the land; didn't he tell you that? A. He told me that, yes, sir.

"Q. And you agreed to it? A. Not in that way.

"Q. Did you or did you not agree to it? Didn't you agree to accept that commission in that way? A. With the understanding it should be paid out of that crop.

"Q. Yes. A. Certainly it should be paid out of the crop.

"Q. Yes; your $500 was to be paid out of the crop to you. A. To him.

"Q. Through him, but you were to get the $500 out of the crop. A. He advanced me $500 on that note."

The undisputed evidence shows that the purchaser, Dom, abandoned the contract shortly after making it, and never produced a crop on the land at all. It is true the evidence shows that there never was a formal cancellation by service of a notice as provided by statute for the cancellation of such contracts. But the undisputed evidence also shows that Dom notified the bank of his intention to abandon the contract.

"Of course, the fact that the contract has not been canceled does not adversely affect the defendant in this case. He still has a $500 equity

in the contract. This equity is held by the plaintiff bank as security for the note in suit; and, when the note is paid, of course the defendant becomes fully reinvested with all rights in and to said equity free and clear of all claims on the bank. The note in suit by its terms became payable at a specified date. If the purchaser of the land had gone ahead with the contract, put in the crop, and been successful in raising it, there might have been sufficient moneys realized therefrom so that the share coming to the defendant for his commission would have been fully paid, and thereby in turn the note in suit been discharged. That was doubtless what was anticipated by the defendant and the cashier of the bank. It will be noted, however, that the defendant expressly admits in his testimony that he agreed to take chances on his commission the same as the bank took on the purchase price stipulated to be paid by the purchaser for the land.

The note in suit was made payable at a time which would make it possible to utilize any moneys paid by the purchaser (Dom) upon the land contract, and in turn payable to the defendant as commission for obtaining such purchaser, to pay off the note in suit. This, however, did not affect the note. As we construe the evidence, it establishes, without any actual conflict therein, that the note in suit was given for a sum of money loaned by the bank to the defendant. The note was made payable at a definite time. It has not been paid according to its terms, or at all. In our opinion there was in this case no room for different conclusions as to the material facts. And there was, we think, no basis in the evidence for the verdict absolving the defendant from liability upon the note. We are therefore agreed that the trial court was entirely correct in ordering the verdict to be set aside; and inasmuch as the evidence affirmatively discloses that the defendant has no defense to plaintiff's cause of action, it would be an idle ceremony to remand the cause for a new trial, and it is therefore ordered that the order and judgment appealed from be, and the same hereby are, affirmed.

BRONSON, BIRDZELL, and ROBINSON, JJ., concur.

ROBINSON, J. (concurring). This case merits little consideration or discussion. The facts are not in dispute. The defense is clearly false and grossly unconscionable. On a worthless and abandoned con-

tract for the sale of a half section of land in township 152 of range 80—a contract on which the plaintiff never received and never will receive one dollar—defendant claims a commission of $1,000. He received the total cash payment of $500 with a written interest in the land contract for $500. Then he borrowed from the bank $500, and gave his note for the same, trusting that it might be paid from money received on the land contract. Now he claims that the money loaned to him was in reality a payment of commission on the worthless deal, and that there was no consideration for the note. That is in effect his answer. Yet the defendant himself testified it was agreed between him and the bank that he should take his chance of getting the second $500 commission from the land contract, inasmuch as the bank had received nothing and took the chance of receiving anything on the contract. His own testimony clearly shows that the bank is entitled to recover on the note $500 and interest. The jury found a verdict in favor of the defendant; the court very properly gave judgment against him for the amount of the note and interest.

Now the point is made that, according to some old decisions by this court, that judgment notwithstanding the verdict was irregular, because the plaintiff did not move for judgment at the close of the testimony. That is a tweedledum and tweedledee objection. It is high time for this court to disregard errors so technical and arbitrary. The case presents only one single question: Is the judgment right; is it just; on the facts conceded and established beyond a peradventure is the plaintiff entitled to recover on the note $500 and interest?

Judgment affirmed.

Grace, C. J. (dissenting). This action was brought to recover on a promissory note in the sum of $500. The defense is that there was no consideration for the note. The action was tried to a jury, and a verdict returned in favor of the defendant. Subsequently to the entry of judgment by defendant in his favor plaintiff made a motion for judgment non obstante or for a new trial, and this without any motion for a directed verdict having been made at any time before the close of the entire case. The motion was granted, the judgment in favor of defendant vacated and set aside, and judgment entered in favor of plaintiff, from which and the order granting judgment non obstante this appeal is taken.

The material facts are substantially as follows: The defendant produced a prospective purchaser of land to respondent's cashier. Defendant was to have as his commission in case of sale, $1 per acre and all received above $35 per acre. The purchaser was willing to pay $37.50 per acre. Therefore the commission on the sale was $3.50 per acre. On October 18, 1916, the plaintiff sold to one Frank S. Dom, the proposed purchaser, the west half of section 8, township 152, range 80, and drew what may be termed a preliminary unilateral contract, signed by the bank only, in which were stated the terms of sale. It seems the bank did not own the southwest quarter of section 8, and in this contract stated as follows:

"It is further stipulated that if the said Merchants' State Bank does not secure the consent to this agreement by the owner of the southwest quarter (SW¼) section eight (8), township one hundred fifty-two (152), range eighty (80), and no contract is executed, the sum of one hundred ($100.00) dollars received for this receipt shall be returned to the said Frank S. Dom, and in that event only shall it be returned."

On the 24th day of October the bank entered into a formal crop contract for the sale of the land with Dom. The consideration was $12,000, to be paid by the purchaser by his assuming two mortgages against the land due January 1, 1925, aggregating $6,000, and drawing 7 per cent. interest per annum, and by further paying the sum of $500 on the date of the contract; $500 on the 1st day of January, 1918; $1,000 on the 1st day of January, 1919, and $1,000 on the 1st day of January each year thereafter until balance aside from the mortgages assumed was paid. The first $500 payment was made. The defendant, however, had agreed to accept $500 in full for his commission, for the reason that the bank, not owning the southwest quarter, and not being able to purchase it at a price as cheap as it expected, it was agreed that defendant's commission should be only $500. Defendant received the $500 due him as commission by receiving credit for a $100 note held by the bank against him, and by receiving a cashier's check for $400. Prior to the time that this adjustment for the commission was made an arrangement was made between defendant and plaintiff whereby the former gave his note for $500 to the bank. The defendant claims he gave the note to the bank to make the transaction appear regular in the bank's business. The plaintiff denies this, and claims it was a loan of that amount. It would seem the plaintiff did not desire to turn over

all the cash received on the transaction to pay defendant's commission. Defendant claims there was never to be any liability on his part for having signed the note. In connection with the giving of the note the bank gave to the defendant the following writing, which was duly signed by its cashier:

"Merchants' State Bank, Velva, North Dakota.

"Exhibit A—L. M. D.                                   October 25, 1916.

"This certifies that Mr. S. S. Streeper, of Sawyer, North Dakota, holds an equity in that certain contract for a deed between the Merchants' State Bank of Velva, North Dakota, and Mr. Frank S. Dom and his wife covering the west half (W. ½) of section eight (8), township one hundred fifty-two (152), range eighty (80), said equity being in the sum of five hundred ($500.00) dollars, to be paid out of the crops to be raised the fall of 1917 on said land, providing said crops are sufficient, above interest due on the contract and taxes. If such crops are not sufficient then this equity shall be paid out of subsequent crops.

"And the Merchants' State Bank is this day accepting a note from Mr. S. S. Streeper in the sum of five hundred ($500.00) dollars to be secured by his equity in the above-mentioned contract for a deed, to be paid when this equity in the contract is paid.

"Merchants' State Bank,
"By A. E. Sevaried, Cashier."

Aside from the mortgages assumed at the time the contract was made, plaintiff took a promissory note from the purchaser for the remainder of the respective payments. The purchaser never made any further payment on the contract, and never farmed the land, except during 1917, and the crops that year were lost by hail. The bank still holds his note, and has never legally canceled the contract.

There would seem to be no doubt that the defendant had earned his commission, for the plaintiff entered into a valid contract for the sale of the land with the defendant's prospective purchaser, and that such contract had ever since remained in full force and effect so far as this record shows. The purchaser took possession of the land, and

had executed his notes for the balance of the purchase price after assuming the mortgages as above stated. There seems to be no real controversy in this case relative to the commission. It seems to be conceded that it was earned.

The first serious question is whether defendant incurred personal liability by signing and delivering to plaintiff the $500 note. In view of the terms of the agreement with reference thereto given him by the bank, we are of the opinion he was not personally liable, and this by reason of the provision in the agreement to the effect that the note was "to be paid when this equity in the contract is paid." It would seem to follow that if his equity in the contract was never paid, he would never be under any liability to pay the note. Dom has never made any further payments on the contract than those above mentioned, and the evidence fairly shows that he has abandoned it. In these conditions we are of the opinion there was no liability on the note.

The second serious question here presented is: Did the court err in granting plaintiff's motion for judgment non obstante where there was no motion for a directed verdict at the close of the testimony? It has been in substance held by this court that a motion for judgment non obstante is not proper, where no motion for a directed verdict was made at the close of the testimony or at the close of the testimony of either party as the case may be. Johns v. Ruff, 12 N. D. 74, 95 N. W. 440; Landis Co. v. Konantz Co., 17 N. D. 310, 116 N. W. 333.

We think there was sufficient evidence to sustain the verdict, and that the court erred in granting plaintiff's motion for judgment non obstante. We think it unnecessary to discuss plaintiff's point that the appeal from the order was too late. The judgment appealed from should be reversed, and the case remanded, and the trial court directed to reinstate the judgment in favor of plaintiff.